IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KATHLEEN M. JUNGCLAUS | : | NO.   17-cv-04462-RK |
| Plaintiff | : | |
| v. | : | Jury Trial Demanded |
| | : | |
| WAVERLY HEIGHTS, LTD., | : | |
| THOMAS P. GARVIN and | : | |
| JOHN and JANE DOES NUMBERS 1-21 | : | |
| | : | |
| Defendants | : | |

**DEFENDANTS' BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS COUNTS V AND VI
OF PLAINTIFF'S AMENDED COMPLAINT
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

Defendants, Waverly Heights, Ltd., Thomas P. Garvin and John and Jane Doe Numbers 1-22 (collectively referred to as "Defendants"), hereby move to dismiss Counts V and VI of Plaintiff's Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), with prejudice. For the reasons set forth herein, Plaintiff has failed to state causes of action for defamation and negligent supervision. Further, Defendants also maintain that the defamation claim (even if sufficiently plead) is barred by the applicable statute of limitations.

**I. Case Background**

Defendant, Waverly Heights, Ltd. ("Waverly"), is a Pennsylvania corporation that operates a continuing care retirement community, offering a range of services and residential living opportunities to its 360 residents, including independent living, assisted living, personal care and skilled nursing. Waverly employed Plaintiff from April, 1997 through September 27,

1

2016. *See* Plaintiff's Amended Complaint at ¶ 3. Immediately prior to her termination, Plaintiff was employed as the Vice President of Human Resources. *Id.*

The events leading up to Plaintiff's termination revolve around her dissemination of a Twitter posting about the upcoming Presidential election. *Id.* at ¶ 16. Thomas P. Garvin, the President and CEO of Waverly ("Mr. Garvin"), received an anonymous letter alerting him to the Tweet. *Id.* The Tweet is time-stamped July 24, 2016 and reads as follows:

> @realdonaldtrump I am the VP of HR in a comp outside of Philly
> an informal survey of our employees shows 100% AA employees
> voting Trump!"

Plaintiff posted the Tweet on her Twitter account, on which she is identified by her initials and last name: "@kmjungclaus." *Id.* at ¶ 17. After Mr. Garvin met with Plaintiff to discuss the concerning Tweet, Plaintiff immediately deleted it. *Id.* at ¶ 19. Following a review of the matter by Mr. Garvin and the Board's Personnel Committee, Waverly terminated Plaintiff's employment.

Following her termination, Plaintiff filed gender and age based discrimination and retaliation claims with the Equal Employment Opportunity Commission and Pennsylvania Human Relations Commission. Plaintiff also applied for unemployment compensation benefits. Plaintiff appealed the decision of the Bureau of Unemployment Compensation Referee who initially found her ineligible for unemployment compensation benefits. Thereafter, the Board of Review reversed the decision of the Referee and the Commonwealth Court upheld that decision.

2

On October 6, 2017, Plaintiff filed a Complaint in the above captioned matter against Defendants Waverly and Mr. Garvin, only. The sole claim against Mr. Garvin was for defamation. Counsel for Defendants sent a notice to Plaintiff's counsel informing him that Plaintiff failed to make out a viable claim for defamation; further, even if the claim were sufficiently plead, the claim was barred by the applicable one-year statute of limitations. Defense counsel further notified Plaintiff's counsel that if he failed to voluntarily dismiss the defamation claim against Mr. Garvin, Defendants would file a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

In response, on November 17, 2017, Plaintiff's counsel filed an Amended Complaint.[1] Plaintiff's Amended Complaint now asserts six causes of action. The first four are gender and age related discrimination based claims (Title VII, the ADEA and the PHRA). Count V purports to make out a claim for defamation against Garvin. Further, Plaintiff added another defendant to the lawsuit. Plaintiff named John and Jane Doe Numbers 1-22, representing "the governing body of Waverly, its Board of Trustees" ("hereinafter referred to as "the Board"). *See* Amended Complaint at ¶ 5. Plaintiff asserts a claim for Defamation and Negligent Supervision against the Board. Count VI also extends the claim for Negligent Supervision against Waverly. Accordingly, Counts V and VI of the Amended Complaint are the subject of the instant Motion to Dismiss.

---

[1] Defense counsel previously executed and returned the Request for Waiver of Service of the Summons, which allowed Defendants to file a response within 60 days of October 11, 2017. Fed. R.C.P. 14 (a)(3) allows for a response to an amended pleading to be within 14 days of service or within the time remaining to respond to the original pleading, whichever is longer.

3

## II. Legal Arguments

### A. Motion to Dismiss Standard under Federal Rule 12(b) (6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) reviews the validity of the complaint, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.' " *Iqbal*, 556 U.S. at 684, 129 S.Ct. 1937. The court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. Id. at 678–79, 129 S.Ct. 1937. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678, 129 S.Ct. 1937 (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955). Whether a complaint contains a plausible claim for relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678–79, 129 S.Ct. 1937 (*citing Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). In light of *Iqbal*, the United States Court of Appeals for the Third Circuit has instructed that district courts should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts alleged in the complaint are sufficient

4

to show that the plaintiff has a 'plausible claim for relief.' " *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir.2009). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (*citing Twombly*, 550 U.S. at 556, 127 S.Ct. 1955).

### B. Dismissal of Count V for Defamation Under Fed. R.C.P. 12(b)(6).

Plaintiff's initial Complaint named only Mr. Garvin in the Defamation count. It is believed and therefore averred that Plaintiff's claim in this regard is manufactured in order to name Mr. Garvin as a party to this lawsuit despite the fact that at all times he was acting in his capacity as CEO/President of Waverly. In the Amended Complaint, Plaintiff now also includes the Board in Count V, despite her inability to plead a single defamatory utterance by any member of the Board.

#### i. Failure to State a Claim for Defamation

In order to state a claim for defamation under Pennsylvania law, a plaintiff has the burden of proving:

(1) The defamatory character of the communication;
(2) Its publication by the defendant;
(3) Its application to the plaintiff;
(4) The understanding by the recipient of its defamatory meaning;
(5) The understanding by the recipient of it as intended to be applied to the plaintiff;
(6) Special harm resulting to the plaintiff from its publication; and
(7) Abuse of a conditionally privileged occasion.

*Joseph v. Scranton Times, L.P.*, 129 A.3d 404, 424 (Pa.2015)(*quoting* 42 Pa. Cons. Stat. § 8343(a)).

5

Initially, the Court must make a threshold determination whether the challenged statements are capable of defamatory meaning. *Gibney v. Fitzgibbon*, 547 Fed.Appx. 111, 113 (3d Cir.2013); *see also Byars v. Sch. Dist. of Phila.*, 942 F.Supp.2d 552, 564 (E.D.Pa.2013) ("Whether a statement is capable of a defamatory meaning is a question of law for the court."). "If [they are] not, the claim must be dismissed." *Gibney v. Fitzgibbon*, No. CIV. A. 13–7, 2013 WL 1197894, at *3 (E.D.Pa. Mar. 22, 2013), *aff'd*, 547 Fed.Appx. 111 (3d Cir.2013); *see also Bell v. Mayview State Hosp.*, 853 A.2d 1058, 1061 (Pa.Super.Ct.2004) (affirming the dismissal of a complaint where plaintiff's factual averments did not establish defamatory meaning); *Richette v. Phila. Magazine*, No. 802, 1996 WL 756953, at *2 (Pa.Ct.Com.Pl. Jan. 23, 1996) ("[A] trial court must first determine whether the offending statement, taken in context, would be interpreted by a reasonable reader as defamatory. If not, the court should dismiss the action.").

According to paragraph 108 of the Amended Complaint, Plaintiff contends that the undefined statements constitute defamation *per se* in that they "impugned Plaintiff's business conduct, character and standing..." A statement is defamatory if it "'tends so to harm the reputation of another as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her.'" *See U.S. Healthcare v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990) (quoting *Birl v. Phila. Elec. Co.*, 167 A.2d 472, 475 (Pa. 1960)); *Cornell Companies, Inc. v. Borough of New Morgan*, 512 F. Supp. 238, 271 (E.D. Pa. 2007). Certain types of statements carry inherent reputational harm, and the injury to the plaintiff is presumed. *See Cornell Companies, Inc.*, 512 F. Supp. At 271. Such statements are labeled as defamation *per se*.

6

There are only four categories of statements that qualify as defamation per se: "words that impute (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct. *See Clemente v. Espinosa*, 749 F. Supp. 672, 677 (E.D. Pa. 1990). Statements or words falling outside of these four categories will not be considered defamation per se. *See Beverly Enterprises, Inc. v. Trump*, 182 F.3d 183, 188 (3d Cir. 1999) ("[An] accusation of bigotry does not fall within the narrowly defined category of per se defamation." (citing *Clemente*, 749 F. Supp. At 677)).

Ordinarily, when a court determines that statements are capable of defamatory meaning, the plaintiff then must prove that he or she suffered "special harm," which is actual damages that are economic or pecuniary in nature. *See Sprague v. Am. Bar Ass'n*, 276 F. Supp. 2d 365, 368-69 (E.D. Pa. 2003). However, when the statement constitutes defamation per se, the plaintiff is relieved of the requirement of proving special damages. *See Synygy, Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 581 (E.D. Pa. 1999).

Moreover, a statement is considered defamation *per se* that relates to business misconduct if it imputes conduct, characteristics, or a condition that would adversely affect someone in a lawful business or trade. *See Patel v. Patel*, No. 14-2949, 2015 WL 6735958, at *5 (E.D. Pa. Nov. 4, 2015) (citing *Walker v. Grand Central Sanitation, Inc.*, 634 A.2d 237, 241 (Pa. Super. Ct. 1993)). However, the statement must be "peculiarly harmful to one engaged in [that] business or profession. Disparagement of a general character, equally discreditable to all persons, is not enough." *See Clemente*, 749 F. Supp. at 678.

In the case at bar, even in light of Plaintiff's failure to plead the context of the alleged defamatory statements, Plaintiff alludes to Mr. Garvin and/or members of the Board making

7

unspecified statements that would lead one to conclude that she is a racist or somehow involved in business misconduct of the type or sort that would rise to the level of being defamatory. Defendants Mr. Garvin and the Board argue that the caselaw above supports their contention that Plaintiff has failed to make out a claim for defamation on such grounds and the claim should be dismissed with prejudice.

In order to analyze the sufficiency of Plaintiff's claim for defamation, the Court must begin by reviewing the alleged defamatory nature of the statements, including to whom they were published, the recipient of such statements and their understanding of the alleged defamatory meaning and as intended to be applicable to plaintiff and the abuse of a conditionally privileged occasion.[2] Defendants Mr. Garvin and the Board contend that such a review will lead the Court to conclude that Plaintiff offers a litany of speculation which is devoid of the content of the allegedly defamatory communication. In fact, there are even instances when Plaintiff could have quoted directly from the writing she claims contains defamatory content and she failed to do so.[3]

Plaintiff even speculates as to when she *thinks* the unspecified defamatory communications *could* have occurred and the location of the individuals involved in such communications (i.e. at the meeting of the board of trustees). *See* Amended Complaint at ¶ ¶ 33 and 34.

The allegations of defamation and the insufficiency of such allegations are as follows:

---

[2] Plaintiff claims her reputation was damaged by virtue of the *per se* defamatory remarks and taking this allegation as such, she would not be required to prove any resulting damages.

[3] Plaintiff claims that Mr. Garvin defamed her in a Memorandum issued to Waverly residents. Plaintiff had access to this writing through her in-laws who she admits reside at Waverly. *See* Amended Complaint at ¶ 31. Even though Defendants maintain that statements made during the unemployment compensation proceedings constitute judicial privilege, Plaintiff did not even include the specific statements by citing to the unemployment compensation pleadings

8

| Paragraph(s) | Content and Insufficiency |
|---|---|
| 27 | Mr. Garvin communicated with Waverly's senior leadership team on September 27, 2016, the day of the termination. Plaintiff fails to set forth any details of the alleged communication. |
| 28 | Plaintiff told by an outside consultant on September 28, 2016 that Mr. Garvin said she was fired for an inappropriate Face Book post. Taking this statement as true for purposes of considering Defendants' Motion to Dismiss, this statement does not constitute defamation. |
| 29 | On October 7, 8 or 9, 2016, Meg Guenveur told Plaintiff she heard from an undisclosed source that Waverly fired Plaintiff for a violation of its social media policy. In addition to the lack of detail, taking this statement as true for purposes of considering Defendants' Motion to Dismiss, this statement does not constitute defamation. |
| 30 | On or about October 10, 2016, Bill MacGuire told Plaintiff he heard from an undisclosed source that Waverly fired Plaintiff for a violation of its social media policy. In addition to the lack of detail, taking this statement as true for purposes of considering Defendants' Motion to Dismiss, this statement does not constitute defamation. |
| 31 | Mr. Garvin allegedly defamed Plaintiff in the content of a memorandum issued to Waverly residents. Despite having access to the writing through her in-laws who are residents at Waverly, Plaintiff neither quotes nor attaches the writing. |
| 32 | In early December 2016, an unidentified member of Waverly's housekeeping staff told Plaintiff she heard Plaintiff was fired for a "bad Facebook post" and that unidentified people were "talking about it". In addition to the lack of detail, taking this statement as true for purposes of considering Defendants' Motion to Dismiss, these statements do not constitute defamation. |
| 33 and 34 | Mr. Garvin allegedly defamed Plaintiff when addressing the Board. Not a single detail is alleged as to the statements made, the location, the date(s) or any other detail. |
| 35 | The Board members allegedly defamed Plaintiff by not allowing her to tell her side of the story before her termination on September 27, 2016. |

and transcript from the hearing. Defendants maintain that the absence of these references was not accidental but rather purposeful since it would not support Plaintiff's baseless contentions.

>Again, it is difficult to even understand how Mr. Garvin and the Board allegedly not allowing Plaintiff to explain her side of the story constitutes a defamatory utterance.

Plaintiff is under the impression that Mr. Garvin and the Board defamed her in the context of the defenses raised in response to her filing for unemployment compensation benefits. Further, Plaintiff bases this argument upon the Commonwealth Court deeming her to be eligible to receive unemployment compensation benefits after the Court opined that she had not violated the company social media policy. Plaintiff erroneously submits that this result somehow proves that Mr. Garvin and the Board defamed her by asserting in the unemployment compensation pleadings and proceedings that Plaintiff's termination was based upon Waverly's opinion that she had, *inter alia*, acted in a manner that was contrary to the company's social media policy. *See* Amended Complaint at ¶¶ 36 and 37.

In further support of her defamation claim, in the body of Count V, Plaintiff continues to speculate and fails to provide necessary details, whereby she alleges:

| | |
|---|---|
| 100 | Mr. Garvin referenced Plaintiff in a "defamatory fashion". |
| 101 | The Board allegedly repeated Mr. Garvin's supposed unspecified defamatory remarks on unknown dates. |
| 102 | Defamatory statements "were undoubtedly" repeated to others (i.e. witnesses and in the pleadings during the unemployment compensation proceedings). |
| 103 | Unspecified comments "indicated Plaintiff was racist".[4] |
| 104 | Unspecified comments "placed [Plaintiff] in a bad light." |

---

[4] Plaintiff references that Defendants claimed she was racist in the context of the unemployment compensation proceeding. *See* Amended Complaint at ¶ 63. This assertion is blatantly false which explains why Plaintiff did not plead the content of such a statement in either the unemployment compensation pleadings or hearing transcript.

10

The above allegations included within Count V are equally devoid of any of the necessary elements to substantiate a claim for defamation. Plaintiff's allegations are speculative. Plaintiff fails to detail the content of the allegedly defamatory statements, the actors involved in the dissemination; the alleged recipients of the statements and when Mr. Garvin and/or members of the Board allegedly uttered or published such unspecified objectionable words or writings.

In addition to Plaintiff's failure to sufficiently plead the necessary elements to formulate a viable claim for defamation, to the extent that Mr. Garvin and/or members of the Board are alleged to have acted during the course and scope of the unemployment compensation proceeding, such statements and writings are judicially privileged. In addition, in paragraph 37 of the Amended Complaint Plaintiff avers that "without exercising independent judgment, Waverly Heights' lawyer simply incorporated falsehoods in [Waverly Heights'] filing. *See* Amended Complaint at ¶ 37.

The general rule is that statements made during the course of judicial proceedings are absolutely privileged when it comes to defamation, whether they occur in open court or in the pleadings. *Binder v. Triangle Pubs., Inc.*, 275 A.2d 53, 56 (Pa. 1971); *Greenberg v. McGraw*, 161 A.3d 976, 981 (Pa. Super. Ct. 2017). The reason for such wide-reaching immunity is to prevent the chilling effect that permitting claimants to recover against lawyers and other officers of the court for things stated in court or in pleadings would have on advocacy:

> Justice can be administered only when parties are permitted to plead freely in the courts and to aver whatever ought to be known without fear of consequences, if a material and pertinent averment should not be sustained. Wrong may at times be done to a defamed party, but it is *damnum absque injuria*. The inconvenience of the individual must yield to a rule for the good of the general public.

11

*Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986) (citing *Greenberg v. Aetna Ins. Co.*, 235 A.2d 576, 578 (Pa. 1967)).

For example, in *Bochetto v. Gibson*, the Chester County Court of Common Pleas held that potentially defamatory statements made in a complaint were absolutely privileged even though a copy of the complaint was sent to the press. *See Bochetto v. Gibson*, No. 3722, at 6 (Chester Cty. C.P. Mar. 13, 2002). The complaint made allegations that opposing counsel had suppressed an expert's report, told the expert to re-draft that report, and suggested opposing counsel was guilty of malpractice because "'lawyers that yell the loudest about being sued are usually the most guilty.'" *See id.* at 2–3. Even though the press republished many excerpts from the complaint, including the alleged defamatory statements, an action for defamation could not be sustained because those statements occurred in the pleadings, which are unequivocally a part of the judicial process. *See id.* at 7–8.

Conversely, in *Post v. Mendel*, the Pennsylvania Supreme Court ruled that defamatory statements made about opposing counsel in a letter from one attorney to a judge, the Pennsylvania disciplinary board, and a client of opposing counsel were not privileged because they were not made in the course of regular judicial proceedings. *See Post v. Mendel*, 507 A.2d 351, 352 (Pa. 1986). In the letter, opposing counsel was accused of misleading jurors, lying to the court, and engaging in "patent, deceptive, [and] nefarious" acts. *See id.* at 352–53. The letter also accused opposed counsel of being a "piranha" and not being fit to practice law. *See id.* at 353.

Even though this letter referenced matters that occurred at trial, the court determined that it did not fall within the realm of protection afforded by the judicial immunity privilege because

the statements were not relevant or material to the legal claims being pursued. *See id.* at 355–56. Additionally, while the letter was sent to the trial judge who decided the underlying case, it was not addressed to him, and it did not provide legal arguments or request any sort of relief from the court. *See id.* The statements were clearly just an attempt to shame opposing counsel. *See id.*

As such, the only limitation on this privilege is that the allegedly defamatory statements must be relevant and material to the issues in the action. *See id.* at 355.

The privilege also extends to less formal communications made during judicial proceedings, such as preliminary conferences and correspondence between attorneys in furtherance of the clients' interests. *Pawlawski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. Ct. 1991); *Moses v. McWilliams*, 549 A.2d 950, 956 (Pa. Super. Ct. 1989) (en banc), appeal denied, 558 A.2d 532 (1989); *Pelagatti v. Cohen*, 536 A.2d 1337, 1344 (Pa. Super. Ct. 1987).

For the above reasons, Plaintiff's defamation claim against Mr. Garvin and the Board should be dismissed with prejudice.

### ii. Claims for Defamation are Time Barred

Alternatively, even if this Honorable Court opines that Plaintiff has sufficiently pled the elements necessary to make out a cognizable claim for defamation against Mr. Garvin and members of the Board, the claims are time barred. The statute of limitations is usually asserted as an affirmative defense. However, it can also provide proper grounds for dismissal of a complaint under Rule 12(b)(6). *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975) ("[A] Rule 12(b) motion can be utilized when the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." (citation omitted)); *see also Berg v. Access Grp., Inc.*, No. 13-5980, 2014 WL 4812331, at *12

(E.D. Pa. Sept. 26, 2014) (observing that the statute of limitations can be used as grounds to dismiss a complaint). For a complaint to be dismissed under Rule 12(b)(6), the facts alleged within the complaint must clearly indicate that the claim is time-barred. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994) ("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period…").

Even if Plaintiff properly pled a cause of action against Mr. Garvin and/or the Board, the claim is barred by Pennsylvania's one-year statute of limitations. *See* 42 PA Cons. Stat. Ann. 5523(1) (2010); *Menichini v. Grant,* 995 F.2d 1224, 1228 n. 2 (3d Cir. 1993). State statutes of limitations control state law based claims in federal court. *Wellsville. Simmons Abrasive Co.*, 345 US 514, 517 (1953).

Defendants Mr. Garvin and the Board maintain that even if Plaintiff met the element of pleading the utterance of communications that are of a "defamatory character", any such statements made prior to or on October 5, 2016 would be time barred (*See* Amended Complaint at ¶¶ 27 and 28). Further, the alleged defamatory statements Plaintiff now asserts that occurred on unspecified dates after October 6, 2016 through early December 2016 must be dismissed due to Plaintiff's failure to make out a claim for defamation, as argued above in section II(B)(i) of the Brief contained herein. Likewise, those undefined statements allegedly made during the context of the Unemployment Compensation proceeding should be dismissed based upon judicial privilege, as detailed in section II(B)(i) of this Brief.

### C. Dismissal of Count VI for Negligent Supervision Under Fed. R.C.P. 12(b)(6).

#### i. Plaintiff's Negligent Supervision Claim against the Board

Under Pennsylvania law, a claim for Negligent Supervision exists only where an *employer* fails to exercise ordinary care to prevent an intentional harm to a third party that: (1) is committed on the *employer's* premises by an employee acting outside the scope of his or her employment; and (2) is reasonably foreseeable. *Petruska v. Gannon Univ.*, 462 F.3d 294, 309 n.14 (3d Cir. 2006); *see also Dempsey*, 246 A.2d at 420 ("To recover for negligent supervision . . . a plaintiff must prove that [the] loss resulted from: (1) a failure [of the *employer*] to exercise ordinary care to prevent an intentional harm by an employee acting outside the scope of employment, (2) that is committed on the *employer's* premises, (3) when the *employer* knows or has reason to know of the necessity and ability to control the employee." (emphasis added)).

Although Pennsylvania recognizes a cause of action for negligent supervision, it "has never been understood as placing on the [board of] directors the responsibility for [the] supervision of employees." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 489 (3d Cir. 2013) (citing *In re Caremark Int'l Inc.*, 698 A.2d 958, 971 (Del. Ch. 1996)). This is because the fiduciary duties of the board are entirely different from the duties of an employer, which are to essentially to manage day-to-day operations. *Winer Family Tr. v. Queen*, 503 F.3d 319, 338 (3d Cir. 2007).

To add further support, cases where negligent supervision has been found require an *employer's* failure to control its employees. *See, e.g., Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 420–22 (Pa. 1968) (noting defendants in negligent supervision cases are always corporate *employers*); *Harris v. KFC U.S. Props., Inc.*, No. 10-3198, 2012 WL 2327748, at *7 (E.D. Pa.

15

June 18, 2012) (finding *employer* had no knowledge of employee's violent propensities and holding *employer* not liable for injuries intentionally caused by employee to customer); *Corr. Med. Care, Inc. v. Gray*, No. 07-2840, 2008 WL 248977, at *15–16 (E.D. Pa. Jan. 30, 2008) (stating plaintiff pled sufficient facts relating to *employer's* failure to supervise private investigators to survive motion to dismiss).

Thus, as in the instant case where the plaintiff does not allege that the Board is her employer, negligent supervision "is not a viable theory of liability."[5] *Belmont*, 708 F.3d at 490 (citing *Quandry Sols., Inc. v. Verifone Inc.*, No. 07-97, 2007 WL 655606, at *5 (E.D. Pa. May 1, 2007)). To the extent that Plaintiff has alleged negligent supervision against the Board who neither is neither Plaintiff's employer nor alleged to be her employer, there is no basis for the negligent supervision claim. Plaintiff's claim for Negligent Supervision against the Board should be dismissed with prejudice for the reasons set forth above,

### ii. Plaintiff's Negligent Supervision Claim against Waverly

Plaintiff alleges in Count VI that Waverly was "negligent in [its] supervision of Garvin, thereby allowing him to engage in the conduct heretofore alleged." *See* Amended Complaint at ¶111. Plaintiff avers that the degree of negligence was willful and wanton and that she was injured and sustained damages because of the negligent supervision. *Id.* at ¶¶ 112 and 113. The causes of action brought against Waverly are found at Counts I through IV of the Amended Complaint based upon alleged discrimination, hostile work environment and retaliation on the basis of gender and age in violation of Title VII, the ADEA and the PHRA. As such, the objectionable conduct for which Plaintiff is attempting to hold Waverly liable under a Negligent Supervision theory is based upon the conduct in the aforementioned causes of action.

16

In support of its request to dismiss Count VI, Waverly argues that the Negligent Supervision claim is preempted by the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951, *et seq.* As such, when analyzing this issue, the Court need not examine whether Plaintiff alleged a sufficient factual basis to make out a claim for Negligent Supervision. Rather, even if the allegations set forth a viable claim (the same being denied); the claim is preempted by the PHRA. In Pennsylvania, "it is firmly established that negligent supervision claims arising out of discrimination cases . . . must be brought under the [PHRA]." *Randler v. Kountry Kraft Kitchens*, No. 11-474, 2012 WL 6561510, at *14 (M.D. Pa. Dec. 17, 2012) (citing cases); *see also Stell v. PMC Technologies, Inc.*, No. 04-5739, 2005 WL 2050297, at *2 (E.D. Pa. Aug. 24, 2005) (dismissing negligence claim based on a theory of negligent supervision as preempted by the PHRA when underlying claim is discrimination arising in employment context); *McGovern v. Jack D's, Inc.*, No. 03- 9 5547, 2004 WL 228667, at *7 (E.D. Pa. Feb. 3, 2004) (noting the "weight of authority cuts in favor of preemption with regard to negligent supervision claims").

Plaintiff's theory of Waverly's negligent supervision sounds in allegedly discriminatory actions and inactions. Therefore, Plaintiff's Negligent Supervision claim is preempted by the PHRA. Accordingly, Waverly respectfully requests that this Honorable Court dismiss Count VI of Plaintiff's Amended Complaint against Waverly.

---

[5] There is no dispute that Waverly employed Plaintiff. *See* Amended Complaint at ¶10.

### III. Conclusion

For the foregoing reasons, Defendants respectfully request that this Honorable Court grant Defendants' Motion to Dismiss Counts V (as to Garvin and the Board) and VI (as to Waverly and the Board) of Plaintiff's Amended Complaint with prejudice.

Respectfully submitted,

**EASTBURN AND GRAY, P.C.**

By: *[signature]*
Grace M. Deon

Dated: December 11, 2017

60 East Court Street
P.O. Box 1389
Doylestown, PA  18901
(215)345-7000
(215)345-9142 (facsimile)
gdeon@eastburngray.com

*Attorneys for Defendants*