

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF LABOR AND INDUSTRY
**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW**
LABOR AND INDUSTRY BUILDING
HARRISBURG, PENNSYLVANIA 17121
PHONE: 717-787-5122   FAX: 717-787-6125

BH

DD-58
REV 3/12

### DECISION AND ORDER

| APPEAL NO. | S.S. ACCT. NO. | DECISION NO. | ORDER MAILING DATE |
|---|---|---|---|
| B-16-09-F-6840 | 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 | B-595395 | FEBRUARY 21, 2017 |

| CONCERNING THE CLAIM OF: | EMPLOYER |
|---|---|
| KATHLEEN M JUNGCLAUS<br>1129 MILL ROAD CIRCLE<br>RYDAL PA 19046 | WAVERLY HEIGHTS LTD<br>1400 WAVERLY ROAD<br>GLADWYNE PA 19035 |

| DATE AND NATURE OF REFEREE'S DECISION | DATE OF APPLICATION FOR BENEFITS | WAITING WEEK ENDING DATE |
|---|---|---|
| 11/29/2016: Ineligible 402(e) | 10/2/2016 | 10/8/2016 |

COMPENSABLE WEEK ENDING DATE(S)

APPEAL FROM REFEREE'S DECISION FILED BY:

X CLAIMANT   ☐ EMPLOYER   ☐ DEPT

## FINDINGS OF FACT:

1. Waverly Heights, LTD, employed the claimant from April 1997 through September 27, 2016, as a full-time vice president of human resources earning $112,000.00 annually.

2. The employer maintains a social media policy, which provides, in relevant part, "WHL has an interest in promoting and protecting its reputation[,] as well as the dignity, respect, and confidentiality of its residents, clients, and employees as depicted in social media, whether through WHL's own postings or that of others. Towards that end, WHL will actively manage the content of its social media sites to uphold the mission and values of the company. Also, WHL expects employees who identify themselves with WHL in either internal or external social media to conduct themselves according to this policy."

3. The claimant knew of the employer's social media policy.

4. On July 24, 2016, the claimant posted on her Twitter page, "@realDonaldTrump I am the VP of HR in a comp outside of philly an informal survey of our employees shows 100% AA employees voting Trump!."

5. On September 19, 2016, the employer became aware of the claimant's July 24, 2016, Twitter posting.



EXHIBIT
PHC.3

Kathleen M. Jungclaus
B-16-09-F-6840
Page 2

6. Upon learning of the claimant's July 24, 2016 Twitter posting, the employer began an investigation.

7. On September 27, 2016, after the competition of its investigation, the employer discharged the claimant for allegedly violating its social medial policy by posting the July 24, 2016 Twitter message on her Twitter account.

DISCUSSION: The Department of Labor and Industry (Department) issued a determination granting unemployment compensation benefits to the claimant under Section 402(e) of the Pennsylvania Unemployment Compensation Law (Law). The employer appealed to a Referee, and a hearing was held, at which both parties testified. The Referee issued a decision and order reversing the Department's determination, which the claimant now appeals to the Unemployment Compensation Board of Review (Board).

On appeal, the claimant discusses information absent from the record before the Referee. The Board cannot consider such extra record information and avoided doing so here. Section 402(e) of the Law provides that a claimant is ineligible for benefits in any week where her unemployment is due to her discharge from work for willful misconduct connected with her work. Under this section of the Law, the employer bears the burden of establishing the claimant's discharge was for willful misconduct connected with her work. Although the Law fails to define "willful misconduct," the Pennsylvania appellate courts have held that a deliberate refusal to comply with an employer's policy constitutes willful misconduct. If the employer proves the claimant knew the policy and deliberately violated it, the burden shifts to the claimant to prove good cause for the violation, or that the policy was unreasonable.

Here, the employer discharged the claimant for allegedly violating its social medial policy. Through credible testimony and documentary evidence, the employer established that it maintains a social media policy, which provides, in relevant part, "WHL has an interest in promoting and protecting its reputation[,] as well as the dignity, respect, and confidentiality of its residents, clients, and employees as depicted in social media, whether through WHL's own postings or that of others. Towards that end, WHL will actively manage the content of its social media sites to uphold the mission and values of the company. Also, WHL expects employees who identify themselves with WHL in either internal or external social media to conduct themselves according to this policy." The claimant admitted to knowing the employer's policy.

The employer further credibly established that on July 24, 2016, a Twitter message was posted on the claimant's Twitter page stating, "@realDonaldTrump I am the VP of HR in a comp outside of philly an informal survey of our employees shows 100% AA employees voting Trump!." The claimant denied posting the Twitter message; rather, she contended, her husband posted the message using her Twitter account. The Board, however, does not find the claimant's assertion to be credible. Instead, the Board

Kathleen M. Jungclaus
B-16-09-F-6840
Page 3

however, does not find the claimant's assertion to be credible. Instead, the Board concludes the claimant did, in fact, post the message on her Twitter page. The Board reaches this conclusion in light of the claimant's testimony, in which she stated, "I have a right to political free speech and that's what I was exercising." This testimony is an admission to the alleged conduct, as the claimant could not have exercised her political free speech without having posted the message.

Nevertheless, the Board concludes the claimant's conduct did not violate the employer's social media policy. Under the express language of the employer's policy, an employee's social media post falls under the purview of the policy if the employee identifies themselves with the employer. Here, the claimant's Twitter post does not identify herself with the employer. Although the post identifies the claimant as the vice president of human resources for a company located in Philadelphia, such a statement is overly-broad so as to say it identifies the claimant with the employer. Similarly, the mere fact the claimant "follows" the employer's Twitter account is insufficient to say that the claimant identified herself with the employer. Finally, while it may be true that an individual, through additional research, could conclude the claimant was employed by the employer at the time she posted the Twitter message, such is not the standard presented by the employer's social media policy. For these reasons, the Board concludes the employer failed to meet its burden under Section 402(e) of the Law. The claimant is therefore eligible for benefits.

CONCLUSION OF LAW: The claimant is eligible for benefits under the provisions of Section 402(e) of the Law.

ORDER: The decision of the Referee is reversed and benefits are granted.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW

Richard W. Bloomingdale, Chairman

John T. Poprik, Member

Keren Putman, Member

Claimant: Kathleen M. Jungclaus   Appeal No.: B-16-09-F-6840

**The following interested parties and representatives were also mailed a copy of the Board's decision on the mailing date indicated:**

| PARTY OR REPRESENTATIVE | | REPRESENTING | | |
|---|---|---|---|---|
| | | CLAIMANT | EMPLOYER | DEPT |
| Name, Title & Address | MARK D SCHWARTZ, ESQUIRE<br>PO BOX 330<br>BRYN MAWR PA 19010 | X | ☐ | ☐ |
| Name, Title & Address | GRACE M DEON, ESQUIRE<br>PO BOX 1389<br>DOYLESTOWN PA 18901<br><br>GRACE M DEON, ESQUIRE<br>60 EAST COURT STREET<br>DOYLESTOWN PA 18901 | ☐ | X | ☐ |
| Name, Title & Address | | ☐ | ☐ | ☐ |
| Name, Title & Address | | ☐ | ☐ | ☐ |
| Name, Title & Address | | ☐ | ☐ | ☐ |

CLAIMANTS RULED INELIGIBLE by this decision may be subject to an overpayment, recoupable by deduction from future unemployment compensation benefits or by direct repayment.

## APPEALING A UC BOARD OF REVIEW DECISION TO THE COMMONWEALTH COURT

If a party disagrees with the Board's attached disposition, the party has the right to file a petition for review with the Commonwealth Court of Pennsylvania. A petition to the Commonwealth Court may be filed within 30 days of the mailing date of the Board's disposition. The Board has nothing to do with the filing or processing of petitions to the Court. The Board does not represent either the claimant or the employer before the Court. Petitions may be filed in person or by mail. If mailing, you may wish to use a U.S. Postal Service Certificate of Mailing, Form 3817. You may obtain the form at the post office or on the USPS website, but a USPS employee must complete it at the post office.

Prior to filing a petition for review with the Commonwealth Court, a party may wish to consult an attorney. If a claimant qualifies, free legal assistance may be available from local legal services organizations, local bar associations, or law school clinics.

---

**COMPLETE AND MAIL YOUR 3817 FORM AND PETITION TO:**

Commonwealth Court of Pennsylvania
Pennsylvania Judicial Center
601 Commonwealth Avenue, Suite 2100
P.O. Box 69185
Harrisburg, Pa. 17106-9185

*Also*
**Mail a Copy of the Petition by Certified Mail, Return Receipt Requested to:**

| **Pennsylvania Office of Attorney General**<br>16th Floor, Strawberry Square<br>Harrisburg, Pa. 17120 | **Unemployment Compensation Board of Review**<br>Department of Labor and Industry<br>651 Boas Street, 10th Floor<br>Harrisburg, Pa. 17121 |
|---|---|

**Mail a Copy of the Petition by First-Class Mail to:**
If Claimant Appealing to Court: To the Employer
*or*
If Employer Appealing to Court: To the Claimant

---

If you have any questions regarding the filing of a petition for review with Commonwealth Court, you may call:

717-255-1650

---

## REQUESTING THE UC BOARD OF REVIEW TO RECONSIDER ITS DECISION

A party aggrieved by a Board decision may submit a request to the Board to reconsider the decision. The request must be submitted no later than 15 days after the decision mailing date. Reconsideration will be granted only under very limited circumstances, for "good cause." The Board, in most cases, cannot revisit its previous credibility determinations. Also, the Board will not accept additional evidence, unless the party could not have presented the evidence at an earlier stage.

The submission of a request for reconsideration to the Board does not extend the time limit for filing a petition for review with Commonwealth Court.